ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL III-ESPECIAL

| | | |
|---|---|---|
| ROSA BLANCA SANTIAGO CONDE<br><br>Recurrente<br><br>V.<br><br>JUNTA DE DIRECTORES CONDOMINIO ASHFORD 890<br><br>Recurridos | KLRA202400353 | Revisión Judicial procedente de Departamento de Asuntos del Consumidor<br><br>Querella Núm.: C-SAN-2023-0016589<br><br>Sobre: Condominio (Ley Núm. 104 de 25 de junio de 1958, según enmendada) |

Panel integrado por su presidente, el juez Figueroa Cabán, el juez Bonilla Ortiz, la jueza Mateu Meléndez y la jueza Prats Palerm

**Figueroa Cabán, Juez Ponente**

**SENTENCIA**

En San Juan, Puerto Rico, a 20 de agosto de 2024.

Comparece Rosa Blanca Santiago Conde, en adelante la señora Santiago o la recurrente, y solicita que revisemos una *Resolución* emitida por el Departamento de Asuntos del Consumidor, en adelante DACO. Mediante dicho dictamen, se declaró "No Ha Lugar" la *Querella* y se ordenó su cierre y archivo.

Por los fundamentos que expondremos a continuación, se confirma la *Resolución* recurrida.

**-I-**

Surge de la copia certificada del expediente administrativo que la recurrente presentó, por derecho propio, una *Querella* ante DACO sobre impugnación de asamblea, impugnación de actuaciones de la Junta de Directores y derrama ilegal.[1] En síntesis, la señora

_____
[1] Apéndice del recurrente, págs. 70-81.

Santiago alegó que en una Asamblea Ordinaria se aprobó por mayoría una propuesta para la reparación del elevador actual, que está dañado, por un costo de $30,000.00. Simultáneamente, se aprobó una derrama para la remodelación de dicho elevador.

Adujo que la aprobación de estas obras es contradictoria y que el resultado sería la pérdida de los $30,000.00, ya que eran obras sin garantía. Argumentó, además, que el condominio no contaba con dinero para hacer obras sin garantía y simultáneamente hacer una derrama cuantiosa. Finalmente, la recurrente solicitó como remedio que se determinara que la aprobación de ambas obras (reparación y modernización) es contradictoria y consecuentemente, nula.

Por su parte, la Junta de Directores del Condominio Ashford 890, en adelante Junta de Directores o la recurrida, presentó una *Contestación a Querella*.[2] En esencia, negó las alegaciones y arguyó que el Consejo de Titulares aprobó las obras de reparación del ascensor conforme a lo dispuesto en ley y que la *Querella* era académica.

Luego de celebrada la vista administrativa, DACO acogió las siguientes determinaciones de hecho:

1. La parte querellante se identifica como Rosa Blanca Santiago Conde, quien es titular del Apartamento 5-E del Condominio Ashford 890, en virtud de la escritura de compraventa otorgada el 16 de agosto de 1973, en San Juan, Puerto Rico, ante el Notario José A. Figueroa Morales.

2. El Condominio Ashford 890 se encuentra sometido al régimen de propiedad horizontal.

3. El 14 de agosto de 2023, el Consejo de Titulares del Condominio Ashford 890 celebró una asamblea a los fines de atender varios asuntos, entre ellos la propuesta para

---

[2] *Id.*, págs. 16-18.

realizar reparaciones críticas y urgentes al elevador del lado derecho del condominio.

4. La parte querellante compareció y participó activamente de la asamblea de referencia.

5. En la mencionada asamblea, se presentaron las siguientes alternativas:

   - Modificación Drive Elevator OTIS. Hasta un máximo de $30,000.00, utilizando sobrante de fondo de la cuenta del huracán María.

   - Modernización del Elevador OTIS. Propuesta y derrama de $140,000.00 para la modernización de un elevador del Condominio.

6. Luego de aclararse varias dudas entre los miembros del Consejo de Titulares, se pasó a votación para aprobar la reparación del elevador derecho, por un costo de hasta $30,000.00 y simultáneamente, iniciar una derrama para la modernización del mencionado elevador, por la cantidad de $140,000.00.

7. El resultado de la votación fue de 19 votos a favor y 9 votos en contra. La parte querellante votó en contra. Así las cosas, quedaron aprobadas las propuestas de reparación del elevador y la modernización del mencionado elevador. De igual modo, quedó aprobada la derrama de $140,000.00 para llevar a cabo los trabajos de modernización de referencia.

8. En la mencionada Asamblea, el Consejo de Titulares votó unánimemente para que el término de la derrama sea por nueve (9) meses, contados a partir del mes de septiembre de 2023. Adicional, el Consejo de Titulares votó unánimemente para que se utilizara el dinero de la reserva para pagar el depósito de 50% del costo total de la modernización del elevador para poder firmar el contrato y que ese dinero fuese repuesto con el pago de la derrama acordado.

9. Inconforme con la determinación del Consejo de Titulares del Condominio Ashford 890 en cuanto a realizar trabajos de reparación del elevador derecho por un costo hasta $30,000.00 y simultáneamente, cobrar una derrama de $140,000.00, para realizar trabajos de modernización de dicho elevador, el 13 de septiembre de 2023, la parte querellante presentó la querella de epígrafe.

10. En la vista administrativa, la parte querellante alegó no oponerse a que se atienda la situación del elevador. Además, admitió que el elevador ya fue reparado. Sin embargo, entiende que ambos trabajos no podían llevarse a cabo simultáneamente, por ser contradictorias [sic]. En su lugar, se debió seleccionar solo uno de los trabajos

aprobados: reparación o modernización. A esos efectos solicita que se declare nula la derrama aprobada por el Consejo de Titulares para los trabajos de modernización del elevador derecho del Condominio.

11. Por su parte, la parte querellada, a través de su representante legal, aclaró que los trabajos de reparación del elevador de referencia permitiría[n] que este equipo siga funcionando hasta que se logren los trabajos de modernización aprobados, los cuales son a largo plazo. Estos trabajos de modernización implicaría[n] cambios sustanciales para llevarlo a un equipo del Siglo XXI. Adicional, el cobro de la derrama aprobada por el Consejo de Titulares permitiría que en nueve (9) meses, una vez la derrama sea pagada en su totalidad, se pondría la orden correspondiente para la modernización del elevador.

12. Por último, la parte querellada informó en la vista administrativa que la compañía aseguradora indemnizó al Condominio Ashford 890 para cubrir, en su totalidad, los gastos de reparación del elevador del edificio, cuyos daños fueron ocasionados por el huracán María.[3]

Conforme a lo anterior, DACO concluyó que los planteamientos de la señora Santiago carecían de fundamentos debido a que la Asamblea Extraordinaria se había celebrado de acuerdo a lo dispuesto en la *Ley de Condominios de Puerto Rico*, en adelante Ley Núm. 129-2020. Por tal razón, no procede que DACO sustituya el criterio del Consejo de Titulares, "a quien le corresponde determinar la conveniencia o no de los trabajos para la conservación o seguridad del inmueble, así como para el uso eficaz de los elementos comunes". Lo contrario sería una actuación *ultra vires* de parte del foro administrativo.

En cuanto al reclamo de declarar nula la derrama, DACO entendió que la misma se había aprobado conforme a lo dispuesto en la Ley Núm. 129-2020. También, destacó que, aunque votó en contra de la derrama, la

---

[3] *Id.*, págs. 8-15.

recurrente aprobó los términos para pagarla, como también la fecha de inicio de los pagos.

A base de los hechos que encontró probados, DACO emitió una *Resolución* en la que declaró "No Ha Lugar" la *Querella* y ordenó su archivo.[4]

En desacuerdo, la señora Santiago presentó una *Moción de Reconsideración* en la que destacó que el elevador ya había sido reparado y se encontraba en funcionamiento, por lo que su modernización no es una reparación crítica ni urgente, sino una obra de mejora que requiere, para su aprobación, el consentimiento unánime de todos los titulares.[5]

Debido a que DACO no se expresó sobre la *Reconsideración* dentro del término establecido en la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico*, Ley Núm. 30-2017, en adelante LPAU, se considera rechazada de plano.

Oportunamente, la recurrente acude ante nos mediante el recurso de epígrafe y señala que la agencia cometió el siguiente error:

> ERRÓ EN DERECHO DACO AL DECLARAR NO HA LUGAR LA QUERRELLA PUES LA MODERNIZACIÓN DEL ELEVADOR DERECHO CONSTITUYE UNA OBRA DE MEJORA QUE REQUIERE UNA DERRAMA POR LO QUE ERA NECESARIA LA APROBACIÓN UNÁNIME DE LOS TITULARES CONFORME AL ARTÍCULO 49 DE LA LEY NÚM. 129 DE 16 DE AGOSTO DE 2020, SEGÚN ENMENDADA.

Luego de revisar los escritos de las partes y la copia certificada del expediente administrativo, estamos en posición de resolver.

---

[4] *Id.*, págs. 13-14.
[5] *Id.*, págs. 1-7.

## -II-

### A.

La revisión judicial de las decisiones administrativas tiene como fin primordial delimitar la discreción de las agencias, para asegurar que ejerzan sus funciones conforme la ley y de forma razonable.[6] A esos efectos, la revisión judicial comprende tres aspectos, a saber: 1) la concesión del remedio apropiado; 2) la revisión de las determinaciones de hecho conforme al criterio de evidencia sustancial; y 3) la revisión completa y absoluta de las conclusiones de derecho del organismo administrativo.[7] Además, el tribunal debe determinar si la agencia, en el caso particular, actuó arbitraria o ilegalmente, o de manera tan irrazonable que su actuación constituyó un abuso de discreción.[8]

Es una norma firmemente establecida que las decisiones de los organismos administrativos gozan de deferencia por los tribunales y se presumen correctas en virtud de la experiencia en la materia y pericia de estos organismos.[9] No obstante, la deferencia judicial cede ante las siguientes circunstancias, a saber: cuando la decisión no está basada en evidencia sustancial; cuando el organismo administrativo ha

---

[6] *Fuentes Bonilla v. ELA*, 200 DPR 364 (2018); *Rodríguez Ocasio et al. v. ACAA*, 197 DPR 852, 860 (2017) (Sentencia); *Unlimited v. Mun. de Guaynabo*, 183 DPR 947, 965 (2011); *Empresas Ferrer v. ARPe*, 172 DPR 254, 264 (2007).
[7] *Rodríguez Ocasio et al. v. ACAA*, *supra*, págs. 860-861; *Batista, Nobbe v. Jta. Directores*, 185 DPR 206, 217 (2012); *Padín Medina v. Adm. Sist. Retiro*, 171 DPR 950, 960 (2007).
[8] *Batista, Nobbe v. Jta. Directores, supra*, pág. 216; *JP, Plaza Santa Isabel v. Cordero Badillo*, 177 DPR 177, 187 (2009); *Rivera Concepción v. ARPe*, 152 DPR 116, 122 (2000).
[9] *Graciani Rodríguez v. Garage Isla Verde*, 202 DPR 117, 126 (2019); *Borschow Hosp. v. Junta de Planificación*, 177 DPR 545 (2009); *Martínez v. Rosado*, 165 DPR 582 (2005); *Otero v. Toyota*, 163 DPR 716, 727 (2005); *Misión Ind. v. JCA*, 145 DPR 908, 929 (1998).

errado en la aplicación o interpretación de las leyes o reglamentos; cuando ha mediado una actuación arbitraria, irrazonable o ilegal; o cuando la actuación administrativa lesiona derechos constitucionales fundamentales.[10]

El Tribunal Supremo de Puerto Rico, en adelante TSPR, ha establecido que "[l]as determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo".[11] Evidencia sustancial es aquella prueba pertinente que "una mente razonable pueda aceptar como adecuada para sostener una conclusión".[12] Este estándar de revisión requiere que la evidencia sea considerada en su totalidad, esto es, tanto la que sostenga la decisión administrativa como la que menoscabe el peso que la agencia le haya conferido.[13] Ello implica que de existir un conflicto razonable en la prueba, debe respetarse la apreciación realizada por la agencia.[14] Esta revisión contra el expediente se basa exclusivamente en evidencia y materias oficialmente admitidas, en los asuntos sobre los que se tomó conocimiento oficial y en todo lo que surgió en la vista administrativa.[15]

Respecto a las conclusiones de derecho, la doctrina prevaleciente faculta a los tribunales a

---

[10] *Batista, Nobbe v. Jta. Directores*, *supra*.; *JP, Plaza Santa Isabel v. Cordero Badillo*, *supra*.; *Rivera Concepción v. ARPE*, *supra*.
[11] Sec. 4.5 de la Ley Núm. 38-2017 (3 LPRA sec. 9675).
[12] *Ramírez v. Depto. de Salud*, 147 DPR 901 (1999*); Asoc. Vec. H. San Jorge v. U. Med. Corp.*, 150 DPR 70, 75 (2000); *Graciani Rodríguez v. Garage Isla Verde*, *supra*, pág. 127.
[13] *Assoc. Ins. Agencies, Inc. v. Com. Seg. PR*, 144 DPR 425, 437 (1997).
[14] *Otero v. Toyota*, *supra*; *Hilton v. Junta de Salario Mínimo*, 74 DPR 670, 687 (1953).
[15] *Com. de Seguros v. AEELA*, 171 DPR 514, 525 (2007).

revisarlas en toda su extensión. Sin embargo, ello no significa que aquellos tengan la libertad absoluta para descartarlas libremente.[16] Por el contrario, el "…tribunal podrá sustituir el criterio de la agencia por el propio sólo cuando no pueda hallar una base racional para explicar la decisión administrativa".[17] Por ello, como intimamos previamente, las decisiones de las agencias administrativas merecen la mayor deferencia judicial cuando se trata de la interpretación y aplicación de sus propios reglamentos.[18]

En fin, el criterio a aplicar no es si la decisión administrativa es la más razonable o la mejor, sino si la determinación de la agencia, en interpretación de los reglamentos y las leyes que le incumbe implantar, es una razonable.[19]

**B.**

La *Ley de Condominios de Puerto Rico*, en adelante Ley Núm. 129-2020, define el concepto "obra urgente" como "[t]oda obra cuya ejecución no pueda posponerse por razones apremiantes de seguridad o porque sea necesaria para la restitución de los servicios esenciales, tales como el suministro de agua, de electricidad **o la puesta en funcionamiento de los ascensores**".[20]

---

[16] *Federation Des Industries De La Perfumerie v. Ebel International Limited*, 172 DPR 615 (2007); *Ramírez v. Depto. de Salud, supra.*
[17] *Otero Mercado v. Toyota de Puerto Rico, supra; Misión Ind. de PR v. JP, supra.*
[18] *PCME Comercial, SE v. Junta de Calidad Ambiental*, 166 DPR 599 (2005).
[19] *Id.*
[20] Art. 3(t) de la Ley Núm. 129-2020 (31 LPRA sec. 1921b). (Énfasis suplido).

La autorización de los gastos destinados a este tipo de mejora está sujeta a "la urgencia y la **trascendencia para la posibilidad de vida en el condominio**".[21] Así pues, "[n]o es relevante si es permanente o no o qué proporción guarda el gasto a incurrir con el presupuesto anual. **Lo notable es la indispensabilidad de la ejecución para la vida en el condominio**".[22] En el caso de los ascensores, por ejemplo, como son elementos comunes del bien inmueble,[23] su reparación "podrá catalogarse como una obra urgente si su avería… afecta el disfrute de los apartamientos".[24]

Resulta necesario destacar, que el retiro de los fondos de reserva para obras urgentes tiene un procedimiento particular estatuido, a saber: convocar y celebrar una asamblea extraordinaria del Consejo de Titulares en un término expedito no menor de veinticuatro (24) horas.[25] "La importancia de atender con premura una obra urgente permite que la **autorización mayoritaria** para incursionar en el fondo de reserva pueda obtenerse del Consejo de Titulares".[26]

En contraste con la anterior, la Ley Núm. 129-2020 define obra de mejora como "[t]oda obra permanente que no sea de mantenimiento, dirigida a aumentar el valor o la productividad de la propiedad

---

[21] M. García Cárdenas, *Manual de Propiedad Horizontal: La Ley de Condominios y Esquemas Jurídicos*, San Juan, MJ Editores, 2015, págs. 130-131. (Énfasis suplido).
[22] *Id.*, pág. 131. (Énfasis suplido).
[23] Art. 17(a)(4) de la Ley Núm. 129-2020 (31 LPRA sec. 1921p).
[24] M. Godreau Robles, *El Condominio: El régimen de propiedad horizontal en Puerto Rico*, 3.ª ed., San Juan, Ediciones SITUM, 2023, pág. 245.
[25] Art. 49(a)(2)(d)(2) de la Ley Núm. 129-2020 (31 LPRA sec. 1922u).
[26] Godreau Robles, *op. cit.*, pág. 242. (Énfasis suplido).

en cuestión o a proveer mejores servicios para el disfrute de los apartamentos o de las áreas comunes."[27]

**Las obras de mejora se distinguen de las demás en que "no son obras de mantenimiento ni mucho menos necesarias para el sostenimiento del condominio" si no que "van dirigidas al lujo u ornato o [a la] mera convivencia […]."**[28]

Con relación a la ejecución de las obras de mejora, el Artículo 49(d)(3) de la Ley Núm. 129-2020 dispone que estas "sólo podrán realizarse, mediante la aprobación de dos terceras partes (2/3) de los titulares que a su vez reúnan las dos terceras partes (2/3) de los participantes en las áreas comunes. **Se requerirá el consentimiento unánime del Consejo de Titulares cuando dichas obras de mejoras requieran derrama".**[29]

-III-

Para la recurrente, la reparación del elevador, en la medida en que se puede calificar como una obra extraordinaria o urgente, se podía, como en efecto se hizo, aprobar por la mayoría de los titulares. Sin embargo, la modernización del elevador, en cuanto conlleva "cambios sustanciales", es una mejora, que como se sufragará mediante una derrama, requería el consentimiento unánime del Consejo de Titulares. En consecuencia, solicita que se declare nula la derrama aprobada para la modernización del elevador.

---

[27] 31 LPRA sec. 1921a (q).
[28] A. Ventura-Travaset y González, *Derecho de propiedad horizontal*, 4ta ed., Barcelona, Ed. Bosch, 1980, pág. 275. (Citando a *Marimar Pérez Riera v. Consejo de Titulares del Condominio Marymar Condado*, *supra*). (Énfasis suplido).
[29] 31 LPRA sec. 1922d (3). (Énfasis suplido).

En cambio, para el recurrido, la *Resolución* recurrida debe ser confirmada en todas sus partes por ser correcta en derecho. A su entender, contrario a las alegaciones de la recurrente, las obras relacionadas con la funcionalidad de los elevadores resultan necesarias e imprescindibles "para garantizar el tránsito hacia los apartamentos y la seguridad de todas las personas". Consecuentemente, constituyen una "obra necesaria o extraordinaria y hasta urgente" relacionadas con el mantenimiento de la funcionalidad o seguridad de los residentes. Por tal razón, podían aprobarse, como en efecto se hizo, por la mayoría de todos los votos de todos los titulares presentes.

Luego de revisar independientemente el expediente administrativo, consideramos que la resolución recurrida es correcta por lo cual no amerita nuestra intervención revisora. Veamos.

El propio Artículo 3 de la Ley Núm. 129-2020, *supra*, cataloga como urgente "la puesta en funcionamiento de los ascensores". Por su parte, DACO, luego de celebrar una vista administrativa en la que examinó los testimonios de las partes y con el beneficio del expediente administrativo, determinó que la **Modernización Elevador Otis** del Condominio Ashford 890 es una obra urgente cuya aprobación solo requiere la votación de la mayoría de los titulares en una asamblea debidamente convocada. Esa determinación amerita nuestra deferencia, más aún cuando DACO es un organismo administrativo especializado en materia de propiedad horizontal.[30]

---

[30] *Murphy Bernabe v. Tribunal Superior*, 103 DPR 692, 699 (1975).

Pero hay más. Nuestra revisión independiente del expediente administrativo revela que la determinación impugnada fue aprobada por la mayoría de los titulares en asamblea debidamente convocada.

Además, la recurrente no ha establecido que la *Resolución* recurrida no esté basada en evidencia sustancial que obre en el expediente.

En fin, la señora Santiago no ha derrotado la presunción de corrección de la *Resolución* administrativa recurrida.

**-IV-**

Por los fundamentos previamente expuestos, se confirma la *Resolución* recurrida.

Lo acordó y manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones